Case number 21-1106, Peregrine Oil & Gas II, LLC, Petitioner v. Federal Energy Regulatory Commission. Mr. Flum for the Petitioner, Mr. Ettinger for the Respondent, Mr. Etchemendy for the Respondent-Intervenor. Mr. Flum, good morning. Good morning, Your Honor, and good morning, uh, uh, Judges Sanderson, uh, and Sentel and Walker, and may it please the Court, my name is John Paul Flum, appearing today on behalf of Peregrine Oil & Gas II, LLC. Peregrine requests this Court vacate the FERC's order and remand to FERC with directions that FERC, one, provide refunds for the illegally assessed charges under the reimbursement agreement, two, require Texas Eastern to submit the reimbursement agreement to FERC for approval before Texas Eastern is permitted to reassess charges under that reimbursement agreement, and three, undertake a thorough review of the record that was developed and articulate a reasoned basis for the decisions that FERC will make. Peregrine is requesting that this Court give no deference to FERC's decisions because FERC violated the NGA, and when it failed to require that the reimbursement agreement be submitted to FERC before the charges could be assessed, and violated the APA by failing to provide a reasoned basis for FERC's determinations considering the whole record and taking into account whatever in the record fairly detracted from the weight of the decision FERC undertook. Now, with respect to the reimbursement agreement, FERC engaged in unreasoned decision-making and violated the NGA when it decided to do nothing about the illegal rate that Texas Eastern assessed under the reimbursement agreement. FERC itself noted that it was unaware of any case law or precedent that would support the finding that a non-recurring charge or a charge that involves a limited number of shippers is exempt from the filing requirements under NGA Section 4C, and yet FERC did nothing about this violation of the NGA. FERC does not have the authority under the NGA to decide not to regulate rates. As the Supreme Court informed us in FPC v. Texaco, Inc., Section 16 of the NGA does not authorize the Commission to set at naught an explicit provision of the Act. Section 4C explicitly requires natural gas to file with FERC schedules showing all rates and charges for transportation that are subject to the jurisdiction of FERC, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services. There can be no doubt. Yes, Your Honor. Mr. Sloan, let me ask you about the argument that the agreement needed to be filed with FERC. I understand that you think Texas Eastern's response, its responses to the outages were not reasonable and not timely, but for the sake of my question here, assume that I disagree with you about that. How would you be in a better position if the reimbursement agreement had been filed with FERC? Well, Your Honor, there would have been a record developed as to the justness and reasonableness of the rate that was charged under the reimbursement agreement. But remember, my question assumes that the response to the outage was just and reasonable. Well, this is more a question about the charges that were assessed, Your Honor, instead of the response to the outage itself. And so in a FERC proceeding determining the justness and reasonableness of rates, particularly those under the reimbursement agreement, there's a question of prudency of the costs that are incurred. And Peregrine would have had additional rights to challenge the rates that were charged on a justness and reasonableness standard. And the burden would have been on Texas Eastern to prove up the justness and reasonableness of its charges versus the burden being on Peregrine in this instance to prove up the preponderance of the evidence standard. Now, let me give you an assumption that you'll like what you just said. Where in your rehearing petition can I find that argument? On the reimbursement agreement, Your Honor? Well, not just the reimbursement in general, the specific argument that you just made to me a moment ago. Where can I find that specific argument in your rehearing petition? I will need to identify that for you, Your Honor, and I can certainly take that up on rebuttal if that's okay with you. That sounds great. Thank you. So again, with respect to this reimbursement agreement, it is inextricably intertwined with transportation services. There are two provisions in particular or two items that I want to raise for Your Honor's attention. Number one, in the reimbursement agreement itself, it states that Texas Eastern has the contractual right to shut in service on the Line 41A system if a party to the contract fails to pay an invoice. And that could be seen at GA 1038-41. In addition, Texas Eastern did not undertake any inspections of or commence repairs of the Line 41A system until after the reimbursement agreement was executed. Thus, there can be no question that the reimbursement agreement itself and the charges that were assessed under that agreement are inextricably intertwined with transportation services. Now, FERC determined in the order that Peregrine failed to demonstrate it was entitled to damages and therefore it didn't need to address this issue. But that misses a critical point. By failing to file the reimbursement agreement, Texas Eastern assessed an illegal rate. In essence, FERC never determined that that rate was just and reasonable. And therefore, Texas Eastern should be required to return those illegally collected amounts to parties to the contract. And Peregrine has a separate agreement with ARENA, who was a party to that contract, and therefore would be entitled to receive a refund of those dollars through that separate agreement that it has with ARENA. Moreover, Section 16 of the appropriate to carry out the provisions of the NGA. Now, a clear application of Section 16 and its authority would be to require Texas Eastern to refund the illegally assessed charges under the reimbursement agreement. In addition, given FERC's legal error to require that the reimbursement agreement be filed before it could be assessed, refunds are appropriate. Where the commission commits a legal error, the proper remedy is to put the parties in a position that they would have been in had the error not been made. In the event that Texas Eastern files or had filed the reimbursement agreement with FERC, Peregrine would have had the right to challenge, as we just discussed, Your Honor. And I see that I'm running into my rebuttal time, so I just wanted to raise another point with Your Honors for a minute or two here on the burden of proof. We do certainly have additional arguments that we've raised before this court, but in the interest of time, we're not going to be able to address all of them in oral argument unless Your Honors have questions about them. But with respect to the burden of proof, we definitely want to make sure that the court is and the reply brief, the initial brief at 30 to 36, and the reply brief at 9 to 14, where we provided several examples where there was an unequal treatment afforded to Peregrine's record evidence and where greater weight was given to Texas Eastern. Now, unless Your Honors have any further questions, I just want to conclude that Peregrine and the Court vacate the FERC's order and remand it to FERC with the directions as I stated earlier. Thank you, Your Honors. All right. If there are no questions, then Mr. Edinger, we'll hear from you. Thank you, Judge Henderson, and may it please the Court. I'm Scott Edinger for the Federal Energy Regulatory Commission, and thank you for hearing this case today. Judge Walker, I want to go to your questions about the reimbursement agreement, and I want to emphasize that we agree that, well, to be sure, Peregrine challenged the abstract question of whether the made the case that it was entitled to damages or some kind of remedy for the failure to file this agreement to which it was not a party. And so for that reason, what Peregrine asked for in this case was to be returned to the position that it would have been in, and the commission found that the Texas Eastern had appropriately responded to both the 2014 outage and the 2016 outage that Peregrine had not been injured by any action by Texas Eastern. I want to now circle back to where my friend for Peregrine left off with the standard of review, and the commission's position is that the ALJ in this case applied the appropriate standard of review, and as we set out in our brief, the best evidence of the burden of proof, as we set out in our brief, the best evidence of that burden, the ALJ set forth in paragraphs 34 to 35, and this is JA 940, under the heading of burden of proof. That's point number one, your honors, and number two would be that even if that had been some sort of error, the commission took up this question in its following briefs on exceptions. The commission acknowledged that the word beyond had crept into the ALJ's decision in a couple of places. This is in the affirming order, paragraph 27 at JA 1456-57, and the commission concluded that this is not a close case, and it's not a close call as to Peregrine's theory of the case and the credibility of the witnesses, and I would also add that the remedy, and Peregrine hasn't demonstrated that the remedy for the use of the word beyond can't be de novo review. The commission had determined in two hearing orders, these are JA 72 and JA 139, that a hearing was necessary to resolve the issues that were raised in this case. I also wanted to mention the standard of review for this court. We set that out arbitrary and capricious in the brief. I want to add that, emphasize again that this is a case where the ALJ heard seven days of live testimony, and this is key to the ALJ. The ALJ therefore was able to determine the credibility of the witnesses. The ALJ here, she did not find that the witnesses for Peregrine were credible. In this court, in just an opinion issued this month in an NLRB case, the Wendt Corporation versus NLRB issued on March 1st of this month, explained that this court, in the context of the NLRB, accepts the credibility determinations as adopted by the board unless patently unsupportable. Peregrine has done nothing to demonstrate that the ALJ's credibility determinations are unsupportable. In particular, I would like to point the court to the ALJ's description of the lack of credibility. This decision, which is JA 944, where the ALJ explained that Mr. Timothy for Peregrine, as an expert and as a fact witness, lacked subject matter knowledge. In paragraph 117 of the initial decision, where the ALJ explained that Mr. Timothy had acted like an armchair quarterback and displayed a casual disregard for the emergency procedures and the regulatory approval that was necessary for responding to the outages. I want to make a couple of points about each of the outages at issue here, beginning with the 2014 outage. I think what I want to emphasize is that the decision to close the midline valve was very complicated and difficult for two reasons. The first reason is that an investigation needed to be conducted close to the platform itself to determine what the proper course going forward would be. One of the solutions could have been to fix the damage there, had it not been so severe. That took time to figure out that that was not the case. Therefore, Texas Eastern needed to move on to an alternative. That meant locating and repairing the midline valve. If I can make just a couple of comments about the midline valve, it wasn't as simple as turning a wheel. It involved removing facilities and adding facilities. That took time, and it took time in addition for regulatory approval. Again, something that the witnesses for Peregrine seemed to ignore. As for the second matter, Mr. Edgar, let me ask a reimbursement agreement question. This is related to the question that I asked Mr. Flume. If it had been filed and if there had been a Section 4 proceeding, and if Peregrine had said, hey, these charges that are described in the reimbursement agreement, Texas Eastern ought not be allowed to recover them. Is there a chance that FERC would have said, you're right? Or did FERC's decision in this case answer the question of whether Peregrine's right? I think the latter, Your Honor. The commission determined that irrespective of the filing of the agreement, there was no demonstration of damages. I think what Your Honor is suggesting would be far-fetched. Peregrine would be disputing. We're assuming here that the agreement had been filed and Peregrine is going to challenge that agreement. They're not a party to that agreement. Presumably, the parties to the agreement, ARENA, Renaissance, and GOMEX, wouldn't have challenged it either. Indeed, we don't see their involvement in this case. Not only that, but Peregrine couldn't get any of these producers to serve as witnesses in this case. You're saying that there's no way FERC would have said that the cost was unreasonable because everyone who signed up to pay the costs seems to be fine with it. I think that's the likely outcome. Did FERC say something like that in its decisions in this case? Here, the reasoning was that Peregrine had not demonstrated that it was entitled to damages for the failure to file. As we set forth in our brief, that raises two problems for Peregrine. First, related to standing. In addition to the fact where I started my argument that to be sure, they raised the abstract question of the filing of the reimbursement agreement in their request, but not the second step of demonstrating that they're actually entitled as a non-party that they're entitled to damages here or some remedy here. Thank you. Thank you for your argument, Mr. Etchemendy. Thank you, Your Honor, and may it please the court. Matthew Etchemendy, counsel for Intervenor Texas Eastern. I'd like to start quickly on the reimbursement agreement and the line of questions that Judge Walker had. The commission's holding as the reimbursement agreement was very clear and straightforward. Peregrine simply didn't show that it was damaged by the non-filing of that agreement, separate and apart from the reasonableness of the outages. Now, there are two problems for Peregrine in trying to get out of that on appeal. One is procedural forfeiture. The court has emphasized in many, many cases, there is a requirement to raise issues with specificity in a rehearing request. So, you will look through Peregrine's rehearing request. You will not find a place where Peregrine comes out and says, yes, even if Texas Eastern's responses to the outages were reasonable, we're still entitled to damages just on the issue of the reimbursement agreement, and here's why. Peregrine never did that. Now, Peregrine also has sort of laid in the game, and in its reply brief, it's raised this argument of, well, maybe we would have been better off because we could have filed a complaint in a Section 4 proceeding. You also will not find that in its rehearing request. So, these issues are completely procedurally forfeited. Frankly, also, the argument is extremely implausible on the merits, and I know that Judge Walker, you went over this a little bit, but it is extremely speculative, the idea that in this case where you had all the parties to the agreement agree to it, fine with it, never objected, that Peregrine would actually succeed in challenging the justness and reasonableness of this agreement. Whether or not that's a possibility, it's certainly something that Peregrine did not demonstrate, and it was its burden to demonstrate damages. It did not do that. Thank you, Your Honors. All right. Mr. Flum, why don't you take two minutes? Thank you, Your Honor. So, Judge Walker, in response to your question, we did raise the in particular at Sites JA 1549 to 1550, actually into 1551. We referenced the reimbursement agreement and FERC's failure to demonstrate or to address the damages question. Further, in our hearing request, we did mention the agreement that Peregrine had with ARENA where Peregrine was responsible for 25 percent of the costs that ARENA bore under the reimbursement agreement. Now, I wanted to address quickly just some points on the weather. I know you're time short. Let me ask my question so you have time to answer it and also hit what you're about to hit. You had a separate agreement to pay ARENA's costs. Why does that not take away causation for standing purposes here? Well, certainly, Your Honor, but the causation is, admittedly, it's a bit indirect in terms of the actual causation, but if we trace down the damages that Peregrine faced here, the damages are a result of the delay and of the reimbursement agreement not being filed with FERC. That's the causation that flows through in the first prong of Lujan. We do obviously have a harm, and the redressability as FERC could have addressed this, number one, by requiring that the agreement be submitted to FERC, and number two, allowing for that process to go forward. I want to also emphasize to this Court that regardless of whether Peregrine has damages that flow from the reimbursement agreement, FERC has an obligation to require that it be filed, and it would set a horrible precedent for FERC to blithely ignore an agreement that was not filed that is inextricably intertwined with transportation and allow for pipelines to go forward and not submit these agreements that are subject to negotiations outside of the FERC purview. FERC has an obligation under the Gas Act to ensure that those rates are filed with the FERC. I see I have just a few minutes or a couple points on the judge's credibility, if your honors will allow us to go forward, the credibility determinations of the witnesses. I wanted to emphasize a couple points that we had in our briefing for your honors just to point out the inconsistency in the treatment of witness testimony, particularly with respect to, number one, the obligation, and this goes to the, actually, Mr. Edgar, I think it was the cavalier armchair quarterback is how the ALJ referred to the paragon's witness, Timothy. His cavalier disregard for the regulations is, it's interesting in the joint appendix at 962 in the initial decision, the judge pointed out that the application for the permit from the Bureau of Safety and Environmental Enforcement was filed on January 21st, and the application was approved on January 27th, and yet, Texas Seastern sent out a boat to repair the pipeline on January 16th, several days before it even filed the permit. Timothy was declared to be a cavalier armchair quarterback and casually disregarding regulations. Texas Seastern undertook the exact same action that Mr. Timothy had said was appropriate to do. So instead of giving equal weight to the witnesses, Mr. Timothy was declared to be not given an equal weight for his testimony. And with that, your honors, if you have any more questions, I'm happy to answer them, but I think I'll conclude. All right. Thank you, gentlemen, and Madam Clerk, if you would please adjourn.
judges: Henderson, Walker, Sentelle